IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



FILED
MAY 22 2015
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

DARNELL L. WALKER,

    Petitioner,

v.                                                                     Civil Action No. **3:14CV291**

HAROLD W. CLARKE,

    Respondent.

### REPORT AND RECOMMENDATION

Darnell L. Walker, a Virginia inmate proceeding *pro se*, filed this petition for habeas corpus under 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF No. 4) challenging his convictions in the Circuit Court for the County of Dinwiddie, Virginia (hereinafter, "Circuit Court"). Respondent has moved to dismiss. The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

    **A.**     **Walker's Claims**

Walker argues entitlement to relief on the following grounds:

| | |
|---|---|
| Claim 1 | The Circuit Court erred in denying Walker's demands for habeas relief on his claims of ineffective assistance of counsel and in failing to conduct an evidentiary hearing. (§ 2254 Pet. 15).[1] |
| Claim 2 | "Counsel failed to present evidence of co-defendant Morgan's previous attempt to transfer blame to Jerome Curtis, who was arrested with Morgan on Morgan's prior firearm case." (*Id.* at 17.) |
| Claim 3 | "[C]ounsel failed to present at trial the CD of the audio recording of the 911 call which is more complete and clearer than the tape played by the Commonwealth at trial and would have provided exculpatory evidence for the Petitioner and corroboration of the Petitioner's version of events." (*Id.* at 20.) |

---

[1] The Court employs the pagination assigned to the § 2254 Petition by the CM/ECF docketing system.

Claim 4     "[C]ounsel failed to move to strike the conspiracy charge and argue that the Commonwealth's evidence did not prove any agreement necessary to support a conviction for conspiracy to commit murder." (*Id.* at 25.)

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief." *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (citing cases). This is so because a habeas petitioner is detained as a result of the underlying state conviction, not the state collateral proceeding. *See Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008). Accordingly, it is RECOMMENDED that Claim 1, which merely alleges error in the state post-conviction proceedings, be DISMISSED. Furthermore, for the reasons that follow, it is RECOMMENDED that the remaining claims be DISMISSED as lacking in merit.

### B. Factual and Procedural History

Walker was charged with the first-degree murder of Lowell Glass and Betty Smith, two counts of use of a firearm in commission of murder, and conspiracy to commit murder. (June 11, 2008 Tr. 3-5.) On June 11, 2008, the Circuit Court conducted a bench trial and convicted Walker of the above charges. The Circuit Court sentenced Walker to two terms of life imprisonment plus eighteen years. *Commonwealth v. Walker*, No. CR07F-135-139, at 2 (Va. Cir. Ct. Oct. 8, 2008). The Circuit Court suspended ten years of that sentence. *Id.*

The evidence presented at trial is summarized below. Walker, Glass, and Smith lived in Crews Mobile Home Park. (June 11, 2008 Tr. 24, 104.) Walker sold drugs, and Glass was one of Walker's regular customers. (June 11, 2008 Tr. 229-30.)

### 1. Derrick Morgan's Testimony

On November 28, 2006, Derrick Morgan, Walker's cousin, visited Walker at Walker's trailer. (June 11, 2008 Tr. 23-25.) Amanda Stith, Walker's girlfriend was in Walker's trailer. (June 11, 2008 Tr. 25.) Morgan brought his .22 caliber handgun to Walker's trailer and gave it to Walker. (June 11, 2008 Tr. 26-27.) Thereafter, Walker and Morgan walked six trailers down to Glass's trailer. (June 11, 2008 Tr. 29.)

Upon entering the trailer, Walker went to the back of the trailer with Glass. (June 11, 2008 Tr. 30.) Morgan remained at the front of the trailer with Smith. (June 11, 2008 Tr. 30.) After a few minutes, Morgan heard gunshots from the back of the trailer. (June 11, 2008 Tr. 31.) Morgan got up to walk out of the trailer and passed Walker who was loading the gun. (June 11, 2008 Tr. 31-32.) Morgan left the trailer and was standing on the porch to the trailer when he heard two more gun shots. (June 11, 2008 Tr. 32.) Walker then emerged from the trailer and handed Morgan a phone. (June 11, 2008 32-33.) Morgan then heard Smith moaning. (June 11, 2008 Tr. 101.) Morgan told Walker that "she know who he was so to finish doing what he was doing." (June 11, 2008 Tr. 33.) At the time Morgan made those statements, he did not realize that the phone belonged to Smith and that it was connected to the 911 dispatcher. (June 11, 2008 Tr. 34.) Morgan encouraged Walker to hurry up and shoot Smith. (June 11, 2008 Tr. 33-34.)

After disposing of the gun and the phone, Morgan and Walker returned to Walker's trailer. (June 11, 2008 Tr. 34-36.) Morgan and Walker then used bleach to wash their hands. (June 11, 2008 Tr. 37.) Morgan and Walker then went back to Glass's trailer to recover any lost shell casings. (June 11, 2008 Tr. 37-38.)

### 2. Amanda Stith's Testimony

Amanda Stith, Walker's girlfriend at the time of the murders, corroborated much of Morgan's testimony. According to Stith, on the night of the murders, Walker said he was going

3

to get Morgan. (June 11, 2008 Tr. 105.) Thereafter, Morgan appeared at Walker's trailer and handed Walker a gun. (June 11, 2008 Tr. 106.) Walker loaded the gun, placed it his pocket, and left the trailer with Morgan. (June 11, 2008 Tr. 107.) Earlier that day, Walker had mentioned that he and Morgan were going to go to Glass's trailer. (June 11, 2008 Tr. 109.)

Shortly thereafter, Stith heard two gunshots. (June 11, 2008 Tr. 109). About five or ten minutes later, Morgan, looking scared, came back to the trailer that Stith shared with Walker. (June 11, 2008 Tr. 114.) Walker then arrived and began to strip off his clothes and put them in the washing machine. (June 11, 2008 Tr. 116.) Walker asked Morgan, "[h]ow do you wash gun powder off of your hands?" (June 11, 2008 Tr. 116.)

After showering, Walker began pacing around the trailer and looking out the window. (June 11, 2008 Tr. 118.) Stith asked Walker what was wrong. (June 11, 2008 Tr. 118.) Walker responded, "you be nervous and scared, too, if you F-ing killed two people." (June 11, 2008 Tr. 118-19.)

After Walker was arrested for the murders, Stith visited Walker in jail and asked him if he had killed Glass and Smith. (June 11, 2008 Tr. 121-22.) Walker nodded yes. (June 11, 2008 Tr. 121.)

After his arrest, Walker asked Stith to tell Walker's attorney that Morgan was solely responsible for the murders. (June 11, 2008 Tr. 122.) Stith complied. (June 11, 2008 Tr. 122.) Stith also initially told the police that Morgan had committed the murders. (June 11, 2008 Tr. 129.)

### 3. Forensic Evidence

The sum of the evidence indicates the gun could only fire two bullets before it required reloading. Glass died from three gun shots wounds. (June 11, 2008 Tr. 197.) Smith suffered from three gunshot wounds, none of which were immediately fatal. (June 11, 2008 Tr. 201.)

The forensic evidence was thus consistent with Morgan's testimony that after Walker shot Smith twice, Morgan could hear Smith moaning and urged Walker to finish her off.

### 4. Darnell Walker's Testimony

Walker testified that he did not shoot Glass or Smith. (June 11, 2008 Tr. 227.) According to Walker, on the night of the murders, he met Morgan "[a]t the top of the trailer park." (June 11, 2008 Tr. 234.) Walker claimed that Morgan was mad at Glass because Glass had sworn out a warrant for trespassing against Morgan's friend, Antron Williams. (June 11, 2008 Tr. 232.)

Walker admitted to going to Glass's trailer with Morgan, but insisted that he did not know why they were going to trailer. (June 11, 2008 Tr. 233.) Walker did not know Morgan had the gun when they went into Glass's trailer. (June 11, 2008 Tr. 233.) Walker sat next to Smith, while Morgan went into the back room with Glass. (June 11, 2008 Tr. 236.) Walker then heard two shots. (June 11, 2008 Tr. 237.) According to Walker, Morgan emerged from the back room enraged and reloading the gun. (June 11, 2008 Tr. 237.)

Walker asked Morgan, "what the fuck he was doing." (June 11, 2008 Tr. 238.) Smith, who had her phone out, said, "[D]id you shoot Lowell[?]" (June 11, 2008 Tr. 238.) Morgan "turned around and snatched the phone out of her hands and punched her in the face and told her to shut up, Bitch." (June 11, 2008 Tr. 238.) Morgan then demanded that Walker shoot Smith. (June 11, 2008 Tr. 239.) Walker refused and ran out of the trailer. (June 11, 2008 Tr. 239.)

Walker denied that he ever indicated to Stith that he had killed two people. (June 11, 2008 Tr. 246.)

### 5. The Recording of the 911 call

The recording of the 911 call largely tracks with Morgan's version of the murder of Smith. (ECF No. 18.)

5

### 6. The Circuit Court's Findings at the Trial

The Circuit Court noted that the case turned on the credibility of the witnesses. The Circuit Court found that Morgan "was a highly credible witness [because of] his demeanor and his degree to which he was able to adequately respond to the questions." (June 11, 2008 Tr. 305.) The Circuit Court also found,

> Ms. Stith be very credible. Had no trouble inferring that she was in fact led by conscience to change her story. The Court would note although it doesn't appear from the record that she began crying when she testified to the heart of the matter and the Court having the ability to observe her face and directness with which she answered the questions again finds that she was credible.

(June 11, 2008 Tr. 305.)

With respect to Walker, the Circuit Court found him not to be a credible witness. (June 11, 2008 Tr. 305-06.) This determination was based upon Walker's demeanor and common sense. (June 11, 2008 Tr. 305-06.) For example, the Circuit Court noted that Walker claimed Morgan had punched Smith in the face, but "the medical examiner found that her scalp and soft tissues of the head were without injury." (June 11, 2008 Tr. 306.) Further, the Circuit Court found the recordings of the 911 call was consistent with Morgan's, rather than Walker's version, of events. (June 11, 2008 Tr. 306.)

### C. Analysis

#### 1. The Applicable Constraints upon Federal Habeas Corpus Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008)

(citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## 2. Standard for Demonstrating Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### 3. Claim 2

In Claim 2, Walker faults counsel for failing to present evidence of "Morgan's previous attempt to transfer blame to Jerome Curtis, who was arrested with Morgan on Morgan's prior firearm case." (§ 2254 Pet. 17.) Walker notes that, in a prior juvenile prosecution against Morgan, Morgan falsely attempted to blame Jerome Curtis for ownership of a gun, which actually belonged to Morgan. Although Morgan's juvenile case was unrelated to Walker's criminal case, Walker believes that Morgan's prior attempt to place blame on someone else should have been admitted in Walker's criminal case. In Walker's view, his criminal case involved a question of whether he or Morgan committed the murders, and Morgan's dishonesty in his juvenile case showed a tendency for Morgan to blame other people for things that Morgan did himself. In rejecting this claim, the Circuit Court observed that "the evidence regarding Morgan's attempt to blame Curtis was inadmissible and that even if it had been admissible, there was no prejudice, because there is not a reasonable probability that it would have changed the court's evaluation of Morgan's credibility." *Walker v. Johnson*, No. CL10-89, at 3 (Va. Cir. Ct. Aug. 14, 2013); *see id.* (citation omitted) (observing that specific instances of conduct, unrelated to the matter before the court, may not be used to attack or support specific credibility).

"When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law, . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012). That is the case here. The Circuit Court found that the evidence Walker faults counsel for not introducing was not admissible under state law. Thus, Walker cannot demonstrate counsel acted deficiently or that he was prejudiced by the lack of attempt by counsel to introduce inadmissible evidence. Accordingly, it is RECOMMENDED that Claim 2 be DISMISSED.

### 4. Claim 3

In Claim 3, Walker criticizes counsel for choosing to play a cassette tape of the 911 call made on Smith's phone, rather than the CD recording of that call. Walker contends that there is an additional 8 or 9 seconds of audio from the beginning of the 911 call on the CD that was not on the cassette tape. Walker asserts:

> These additional 8 or 9 seconds would have demonstrated that, when the recording first began, there are several loud pops, each immediately followed by a gasp or yell of a person with a woman's voice reacting in pain and/or shock. . . . [T]he obvious implications are that the additional seconds, preceding any discernable speaking by either Morgan or Petitioner, reveal that Smith, the female victim in the case, was being hit or struck in some fashion and reacting in pain.
> This evidence corroborated the Petitioner's testimony that Morgan struck or punched Smith and took the phone from her.

(§ 2254 Pet. 21 (citation omitted).) Additionally, Walker asserts that the CD recording of the 911 call is clearer than the taped version and generally supports his version of the murder of Smith. (*Id.* at 22.)

In rejecting this claim, the Circuit Court observed:

> I have listened to the cassette and the CD versions of the 911 call. I agree with respondent that the initial nine seconds of the CD "are virtually unintelligible, except for the words of the 911 dispatcher" and that "this additional portion of tape is useless for the purpose of attributing responsibility for the killings." Respondent's Supplemental Motion to Dismiss, ¶ 10. In addition, as respondent points out, petitioner's trial attorneys said that they were "not sure which is better, the tape or the CD." Trial transcript at 42. . . . I do not believe that the use of the cassette rather than the CD shows deficient performance on the part of petitioner's trial attorneys, and I do not believe that the use of the cassette rather than the CD prejudiced petitioner. As respondent points out, "in a case that hinged heavily on the credibility of the witnesses, nothing in the audio recording would have had any bearing on whether this Court believed co-defendant Morgan." Respondent's Supplemental Motion to Dismiss ¶ 11.

*Walker v. Johnson*, No. CL10-89, at 3 (Va. Cir. Ct. Aug. 14, 2013) (spacing corrected). This Court also has reviewed the CD recording and agrees with the Circuit Court's conclusions.

9

Accordingly, it is RECOMMENDED that Claim 3 be DISMISSED because Walker fails to demonstrate deficiency or prejudice.

### 5. Claim 4

With respect to Claim 4, the Circuit Court made the following pertinent findings:

> Petitioner argues that the Commonwealth's evidence was that he, acting alone, killed the victims and that his evidence was that Morgan, acting alone, killed the victims; therefore, there was insufficient evidence of a conspiracy. Petition ¶ 58; Petitioner's Response to Motion to Dismiss ¶ 35. Respondent argues that the evidence demonstrated that Morgan told petitioner to kill victim Betty Smith (Smith) because she could identify them and that petitioner complied, thus showing that there was an agreement to murder Smith. In respondent's view it was therefore not "reasonably likely the [motion to strike the conspiracy charge] would have been granted." Respondent's Supplemental Motion to ¶¶ 5-7.
> I agree with respondent. Morgan testified that he told petitioner to shoot Smith, and the trial court found Morgan to be "highly credible." Trial transcript at 33-34, 305. I believe that since the trial court accepted Morgan's testimony, and since Morgan said that he told petitioner to shoot Smith, the evidence was sufficient to prove a conspiracy, and a motion to strike the conspiracy charge would have been futile. Therefore, I believe that the failure of petitioner's trial attorneys to make a motion to strike regarding the conspiracy charge did not prejudice petitioner.

*Id.* at 4 (spacing corrected). As observed by the Circuit Court, given the evidence, no reasonable probability exists that a motion to strike would have been successful. Because Walker fails to demonstrate any prejudice, it is RECOMMENDED that Claim 4 be DISMISSED.

### D. Conclusion

Accordingly, it is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 12) be GRANTED and that the action be DISMISSED.

Walker is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude

further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Walker and counsel for Respondent.

It is so ORDERED.

/s/ *[signature]*
Roderick C. Young
United States Magistrate Judge

Date: 5/22/15
Richmond, Virginia